UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL KOLBET, | CASE NO. C19-0439JLR |
| Plaintiff, | ORDER GRANTING MOTION FOR EXTENSION OF TIME AND GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND |
| v. | |
| SELENE FINANCE LP, et al., | |
| Defendants. | |

## I.    INTRODUCTION

Before the court are:  (1) Defendant Selene Finance LP's ("Selene") motion to
dismiss *pro se* Plaintiff Michael Kolbet's complaint (MTD (Dkt. # 5); *see also* Compl.
(Dkt. # 1)); and (2) Mr. Kolbet's motion for an extension of time to respond to Selene's
motion to dismiss (MFE (Dkt. # 7)).  Mr. Kolbet opposes Selene's motion to dismiss
(Resp. (Dkt. # 8)), and Selene filed a reply (Reply (Dkt. # 10)).  In Selene's reply, Selene
opposes Mr. Kolbet's motion for an extension of time.  (*See* Reply at 1-2.)  The court has
considered the motions, the parties' submissions concerning the motions, the relevant

portions of the record, and the applicable law.  Being fully advised,[1] the court GRANTS

Mr. Kolbet's motion for an extension of time, GRANTS Selene's motion to dismiss, and

GRANTS Mr. Kolbet leave to file an amended complaint within 15 days of the date of

this order.

## II.    BACKGROUND

This dispute centers on Mr. Kolbet's unsuccessful attempts to modify his loan for

the real property located at 15325 Cascadian Way, Lynnwood, WA 98087 ("the

Property") and the related trustee's sale of the Property.  (*See generally* Compl.)

On or about March 20, 2003, Mr. Kolbet and Teresa Kolbet ("the Kolbets")

executed a promissory note to Washington Mutual Bank, obligating the Kolbets to repay

$218,500.00, plus interest, in $1,292.51 monthly installments.  (*Id.* ¶ 12, Ex. A ("Note")

at 18.[2])  Selene is the servicer of this promissory note, also known as a mortgage.  (*Id.*)

That same day, the Kolbets granted a deed of trust encumbering the Property, and

recorded the deed with the Snohomish County Auditor on March 31, 2003.  (*See*

McCormick Decl. (Dkt. # 10)[3] ¶ 1, Ex. 1 ("DOT").)  The deed of trust is currently

assigned to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not

---

[1] Neither party requests oral argument on the motions (*see* MTD; MFE; Resp.; Reply), and the court concludes that oral argument is unnecessary to its disposition of the motions, *see* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Mr. Kolbet attached exhibits to his complaint.  In citing to these exhibits, the court cites the page numbers provided by the CM/ECF electronic filing system.

[3] Selene attached the declaration of its counsel, Joseph T. McCormick III, and the related exhibits to its motion to dismiss.  (*See* Dkt. # 10 at 12.)  In citing Mr. McCormick's declaration, the court references "McCormick Decl."  Further, in citing to the attached exhibits, the court cites the page numbers provided by the CM/ECF electronic filing system.

Individually but as Trustee for Pretium Mortgage Acquisition Trust. (McCormick Decl. ¶ 2, Ex. 2 ("Assignment").) On or about March 16, 2007, the Kolbets granted a subordinate or junior deed of trust to Washington Mutual Bank, also encumbering the Property, and recorded the junior deed on April 2, 2007. (McCormick Decl. ¶ 3, Ex. 3 ("JDOT").) The junior deed is currently assigned to JPMorgan Chase Bank, NA ("Chase"). (McCormick Decl. ¶ 4, Ex. 4 ("Junior Assignment").)

Mr. Kolbet asserts that he has twice applied for loan modification since 2016, but Selene has denied his applications. (Compl. ¶¶ 13, 15.) Selene first denied Mr. Kolbet's loan modification application on September 24, 2018, citing "excessive obligations in relation to your income." (*Id.* ¶ 15, Ex. B ("1st Denial") at 23.) Mr. Kolbet called Selene on September 27, 2018. (*Id.* ¶ 19.) According to Mr. Kolbet, Selene advised him on that call that Mr. Kolbet "had only one option; that being liquidation of his home and to vacate the property by October 25, 2018." (*Id.*) Selene further advised that Mr. Kolbet could sign a deed in lieu of foreclosure in exchange for a waiver of any future deficiency mortgage balance. (*Id.*) Mr. Kolbet claims that Selene's advice was "misleading, deceptive and illogical" because Mr. Kolbet only owes approximately $300,000.00 on his first and second mortgages, but the Property is valued at around $600,000.00. (*Id.* ¶ 20.) In other words, because Mr. Kolbet has significant equity in the Property, Mr. Kolbet would be better off selling than Property than signing a deed in lieu of foreclosure. (*Id.*)

On October 9, 2018, Mr. Kolbet appealed Selene's denial. (*Id.* ¶ 16, Ex. C ("1st Appeal") at 27.) In his appeal, Mr. Kolbet stated that he did "not have any credit obligations outside of [his] first mortgage and second mortgages," that Chase recently

modified his second mortgage, and that his mother-in-law was willing to gift the Kolbets "$10,000.00 to $15,000.00, cash in order to be applied toward our outstanding balance of $42,460.32." (*Id.*)  Selene denied Mr. Kolbet's appeal, though Mr. Kolbet does not specify on what date.  (*Id.* ¶ 25.)

Mr. Kolbet claims that he reapplied for mortgage assistance with Selene, though he does not specify on what date.  (*Id.* ¶ 26.)  Mr. Kolbet's second application reflected that he was receiving an additional $1,200.00 in monthly income from a tenant.  (*Id.*)  On or about January 16, 2019, Selene advised Mr. Kolbet that no more documents were needed by Selene's underwriting team and that Mr. Kolbet had provided what Selene "considered a full package." (*Id.* ¶ 28.)  According to Mr. Kolbet, at the same time Selene represented that it was considering his second application, Selene started the home foreclosure process with a sale date set for May 10, 2019.  (*Id.* ¶ 29, Ex. E ("Notice") at 51-56.)  Mr. Kolbet alleges that this process is known as "dual tracking" whereby "banks would simultaneously pursue a foreclosure while telling the borrower that his loan modification application was still under consideration." (*See id.* ¶¶ 11, 29.)  Selene eventually denied Mr. Kolbet's second modification application, though Mr. Kolbet does not specify on what date.  (*Id.* ¶ 27.)

In addition, Mr. Kolbet claims that Selene mishandled a number of his loan obligations, including:  (1) stating "that escrow was short $1,055.58 when transfer from Selene took place in 2014," but "fail[ing] to provide accounting records to prove up the shortage"; (2) stating that "escrow was short $2,839.23" when Mr. Kolbet was current on all payments; (3) increasing Mr. Kolbet's monthly payments from $1,296.27 to $1,444.50

"with no explanation of additional escrow charges"; and (4) claiming that "the loan balance was $177,124.38 at the time of transfer," but "refus[ing] to provide proper accounting records to prove up the validity of the debt." (*Id.* ¶¶ 30-33.)

Based on the foregoing, Mr. Kolbet brought suit against Selene on March 26, 2019, asserting fraud, misrepresentation, violation of the Washington Consumer Protection Act ("CPA"), and negligence.[4] (*Id.* ¶¶ 35-61.) On April 17, 2019, Selene filed the present motion to dismiss Mr. Kolbet's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* MTD.) Selene's motion noted on May 10, 2019. (*See id.* at 1.) Under the local rules, Mr. Kolbet's response was due May 6, 2019, *see* Local Rules W.D. Wash. LCR 7(d)(3), but Mr. Kolbet failed to respond on that date (*see* Dkt.). Instead, on May 10, 2019, Mr. Kolbet moved for an extension of time to file his response. (*See* MFE at 1-2.) Mr. Kolbet then filed his response on May 13, 2019. (*See* Resp.) On May 16, 2019, Selene opposed Mr. Kolbet's "untimely" response and filed its reply to Mr. Kolbet's response. (*See* Reply.)

## III. ANALYSIS

### A. Motion to Dismiss Standard

Rule 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under

---

[4] Mr. Kolbet also alleges that Selene violated the National Mortgage Settlement ("NMS"). (*See, e.g.*, Compl. ¶ 20.) The NMS is a settlement involving numerous banks that, *inter alia*, "creates and implements uniform loan modification procedures." (*Id.* ¶¶ 5-11.) Mr. Kolbet claims that Selene is "subject to the terms of the NMS as a result of purchasing servicing rights from" Chase. (*Id.* ¶ 7.) The parties agree, however, that the NMS does not provide a private right of action. (*See* MTD at 5; Resp. at 6-7.)

Rule 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677-78. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

//

Additionally, claims of fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used)." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). Rule 9(b) requires that an allegation of fraud be "specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* at 1106 (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). In other words, an allegation of fraud "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged.'" *Id.* (citing *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). The plaintiff must identify "what is false or misleading about the statement, and why it is false." *Id.* (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994)).

**B.    Documents Attached to the Complaint and Judicial Notice of Publicly Filed Documents**

When determining if a complaint states a claim for relief, the court may consider facts contained in documents attached to the complaint. *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000). Accordingly, the court considers the documents Mr. Kolbet attached to his complaint, including: (1) the promissory note or mortgage (*see* Note); (2) Selene's first denial of Mr. Kolbet's loan modification application (*see* 1st Denial); (3) Mr. Kolbet's appeal of

Selene's first denial (*see* 1st Appeal); (4) the $1,200.00 per month rental agreement that Mr. Kolbet submitted with his second application for loan modification (*see* Compl. ¶ 26, Ex. D ("Rent")); and (5) Selene's notice of trustee's sale (*see* Notice).

In addition, "[a]lthough, as a general rule, a district court may not consider materials not originally included in the pleadings in deciding a Rule 12 motion," the court "may take judicial notice of matters of public record and may consider them without converting a Rule 12 motion into one for summary judgment." *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008) (internal quotation marks and citations omitted). Therefore, pursuant to Selene's request (*see* MTD at 2-3), the court takes judicial notice of the following publicly filed records: (1) the deed of trust, recorded on March 31, 2003, under Snohomish County Auditor instrument number 200303312416 (*see* DOT at 14); (2) the assignment of the deed of trust to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not Individually but as Trustee for Pretium Mortgage Acquisition Trust, recorded on January 10, 2013, under Snohomish County Auditor instrument number 201805210300 (*see* Assignment at 32); (3) the junior deed of trust, recorded on April 2, 2007, under Snohomish County Auditor instrument number 200704020168 (*see* JDOT at 34); (4) the assignment of the junior deed of trust to Chase, recorded on February 19, 2014, under Snohomish County Auditor instrument number 201402190031 (*see* Junior Assignment at 41); and (5) Selene's notice of trustee's sale, recorded on January 9, 2019, under Snohomish County

*//*

*//*

Auditor instrument number 201901090213 (*see* McCormick Decl. ¶ 5, Ex. 5 ("Recorded Notice"[5])).

## C.     Motion for an Extension of Time

As explained, on May 10, 2019, Mr. Kolbet moved for an extension of time to file his motion to dismiss response.  (*See* MFE at 1-2.)  Mr. Kolbet ultimately filed his response on May 13, 2019, one week after his response was due.  (*See* Resp.)

Under Federal Rule of Civil Procedure 6(b)(1)(B), when a party moves for an extension of time after the relevant deadline has expired, the moving party must show that he or she "failed to act because of excusable neglect."  *See* Fed. R. Civ. P. 6(b)(1)(B).  To show excusable neglect, a party must show "good faith" and a "reasonable basis" for not complying with a deadline.  *Silber v. Mabon*, 18 F.3d 1449, 1455 (9th Cir. 1994) (citing *In re Four Seasons Sec. Laws Litig.*, 493 F.2d 1288, 1290 (10th Cir. 1974)).

Mr. Kolbet represents that he "was not aware of the deadline date by which the response needed to be submitted," in part because he has "been under heavy pain medication for ongoing chronic health issues, and somehow failed to check the Local Court Rules to stay ahead of approaching deadlines."  (MFE at 1.)  Further, Mr. Kolbet requested the extension because it took him "longer than anticipated to prepare an adequate response."  (*Id.*)  In response, Selene explains that the parties conducted their

---

[5] Exhibit 5 to the McCormick declaration is similar to the document that Mr. Kolbet filed as Exhibit E to his complaint.  (*Compare* Notice, *with* Recorded Notice.)  Exhibit 5, however, contains the recorded instrument number provided by the Snohomish County Auditor, whereas Exhibit E lacks this number.  (*Id.*)

Rule 26(f) conference on May 1, 2019, during which Mr. Kolbet did not discuss or request an extension of time for his response, which violates Local Rule 7(j). (Reply at 1); *see* Local Rules W.D. Wash. LCR 7(j) (explaining that, when a party requests relief from a deadline after the deadline has passed, "the party should contact the adverse party, meet and confer regarding an extension, and file a stipulation and proposed order with the court" or "use the procedure for telephonic motions in LCR 7(i).").

Considering Mr. Kolbet's *pro se* status, the court concludes that he acted in good faith and with a reasonable basis for not complying with the motion to dismiss response deadline. *Silber*, 18 F.3d at 1455. Mr. Kolbet was under "heavy pain medication" and did not appreciate the deadlines imposed by the local rules. (MFE at 1.) Further, Selene does not allege any prejudice from Mr. Kolbet's one-week late filing, and the court does not find any. Accordingly, the court GRANTS Mr. Kolbet's motion for an extension of time and considers his motion to dismiss response to be timely. Likewise, the court considers Selene's May 16, 2019, reply to be timely.

In addition, the court advises Mr. Kolbet that his *pro se* status does not relieve him from following the same rules that govern other litigants. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("Pro se litigants must follow the same rules of procedure that govern other litigants."), *overruled on other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896, 925 (9th Cir. 2012). Mr. Kolbet can locate materials that assist *pro se* litigants on the Western District of Washington's website. *See Representing Yourself ("Pro Se")*, W. DIST. OF WASH., https://www.wawd.uscourts.gov/representing-yourself-pro-se.

//

## D.    Fraud and Misrepresentation

Selene moves to dismiss Mr. Kolbet's fraud and misrepresentation claims.  (*See* MTD at 7.)  Under Washington law, claims of fraud or intentional misrepresentation involve nine elements:

> (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff.

*Adams v. King Cty.*, 193 P.3d 891, 902 (Wash. 2008) (quoting *Stiley v. Block*, 925 P.2d 194, 204 (Wash. 1996)); *W. Coast, Inc. v. Snohomish Cty.*, 48 P.3d 997, 1000 (Wash. Ct. App. 2002) (identifying "the nine elements of intentional misrepresentation, or fraud").[6] In addition, as explained above, a fraud claim must be pleaded "with particularity."  *See* Fed. R. Civ. P. 9(b); *Vess*, 317 F.3d at 1106.

Mr. Kolbet alleges three misrepresentations by Selene that underlie his fraud and intentional misrepresentation claims:  (1) advising Mr. Kolbet that his only option was to sign a deed in lieu of foreclosure in exchange for a waiver of any future deficiency

---

[6] Mr. Kolbet's complaint recites a claim for "misrepresentation" without specifying whether it is intentional misrepresentation or negligent misrepresentation.  (*See* Compl. ¶¶ 44-50 ("COUNT 2 (Misrepresentation)").)  The elements of intentional misrepresentation are different from the elements of negligent misrepresentation.  *See W. Coast, Inc.*, 48 P.3d at 1000-01.  Here, the allegations in Mr. Kolbet's fraud claim and misrepresentation claim are almost identical (*see* Compl. ¶¶ 35-50), and some of Mr. Kolbet's allegations in his misrepresentation claim appear consistent with intentional misrepresentation, but not negligent misrepresentation (*see, e.g., id.* ¶ 46 ("These affirmative misrepresentations were made knowingly by Defendant")).  Selene also discusses these claims together under the same nine-element fraud and intentional misrepresentation standard (*see* MTD at 7), and Mr. Kolbet does not dispute this characterization (*see* Resp. at 7-8).  The court therefore construes Mr. Kolbet's "misrepresentation" claim as a claim for intentional misrepresentation.

mortgage balance even though Mr. Kolbet had approximately $300,000.00 of equity in the Property; (2) engaging in dual tracking by telling Mr. Kolbet that he did not need to provide more documents for his second loan modification application while simultaneously starting the home foreclosure process; and (3) claiming that Mr. Kolbet owed certain sums of money on his loan without providing accounting records. (*See* Compl. ¶¶ 38, 40(a)-(j), 45, 47(l)-(v).)

Selene argues that Mr. Kolbet has failed to state a claim because he did not plead ignorance of the falsity of these representations or detrimental reliance on them. (MTD at 7.) In fact, Selene claims, Mr. Kolbet's complaint "asserts knowledge of the purported falsity of the statements, which renders amendment of his claims futile." (*Id.*) In response, Mr. Kolbet points out that he alleged that he "justifiably relied on all of Defendant's misrepresentations and omissions," which caused him to "avoid foreclosure alternatives (e.g., refinancing, deed in lieu of foreclosure, short sale, etc.) given his false belief that Defendant was processing his loan modification." (Resp. at 7-8 (citing Compl. ¶¶ 42, 49).) Mr. Kolbet additionally claims that, in the belief that Selene was processing his application, he "made numerous mortgage payments towards a loan," all while Selene intended to initiate foreclosure. (Resp. at 8; Compl. ¶¶ 43, 50.) The court addresses the alleged misrepresentations in turn.

Mr. Kolbet fails to state a fraud or intentional misrepresentation claim based on Selene's purported advice to sign a deed in lieu of foreclosure because he fails to plausibly allege that he relied on this representation. *Adams*, 193 P.3d at 902; *W. Coast, Inc.*, 48 P.3d at 1000. First, by its express terms, Mr. Kolbet's claim that he "avoided

foreclosure alternatives . . . given his false belief that Defendant was processing his loan modification" (*see* Compl. ¶¶ 42, 49), only applies to the dual tracking allegation. In fact, one of the "foreclosure alternatives" Mr. Kolbet claims that he avoided is a "deed in lieu of foreclosure." (*See id.*) Even in the light most favorable to Mr. Kolbet, it is unreasonable that, in reliance on Selene's advice to sign a deed in lieu of foreclosure, Mr. Kolbet avoided signing a deed in lieu of foreclosure. This allegation therefore does not support that Mr. Kolbet relied on Selene's advice.

Second, Mr. Kolbet never signed a deed in lieu of foreclosure. (*See id.* ¶¶ 20-23.) Rather, Mr. Kolbet explains that he understood Selene's advice was "illogical" and "ill-willed" because of his significant home equity. (*Id.*) In fact, after Selene advised that signing the deed in lieu of foreclosure was Mr. Kolbet's "only one option" (*Id.* ¶ 19), Mr. Kolbet appealed the denial, evidencing that he knew that he had more options. (*Id.*) Thus, Mr. Kolbet has failed to plead that he relied on Selene's advice.

Mr. Kolbet also fails to state a fraud or intentional misrepresentation claim based on Selene's purported dual tracking. Mr. Kolbet claims that, on or about January 16, 2019, Selene "advised that as of January 10, 2019, no more documents were being requested by Selene's underwriting team and that Plaintiff had successfully responded to Selene's requests and they had what's considered a full package as outlined by making homes affordable . . . and the NMS." (Compl. ¶¶ 40(e), 47(p).) In reliance on this representation, Mr. Kolbet claims that he "avoided foreclosure alternatives." (*Id.* ¶¶ 42, 49.) However, despite saying that it had a full package, Selene initiated foreclosure. (*Id.* ¶¶ 40(f), 47(q); Notice; Recorded Notice.)

There are numerous problems with this allegation, chief among them that Mr. Kolbet has not explained what was false about Selene's representations. *See Adams*, 193 P.3d at 902; *W. Coast, Inc.*, 48 P.3d at 1000; *see also Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("To satisfy Rule 9(b), a plead must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." (internal quotation marks omitted)). According to Mr. Kolbet's complaint and the attached documents, on January 9, 2019—after Selene denied Mr. Kolbet's first loan modification application, his first appeal, and his second loan modification application— Selene initiated the foreclosure process. (*See* Notice at 51-56.) Then, on January 16, 2019, Selene informed Mr. Kolbet that, "as of January 10, 2019," he did not need to provide additional materials because he had already submitted a full package. (Compl. ¶¶ 40(e), 47(p).) Nothing about these representations are false.

Further, and more fundamentally, Mr. Kolbet has failed to "state with particularity the circumstances constituting fraud" or misrepresentation arising from the alleged dual tracking. Fed. R. Civ. P. 9(b). As discussed above, Mr. Kolbet neglected to plead a number of important facts, including the date on which Selene denied his first loan modification appeal, the date when he reapplied for loan modification, and the date on which Selene denied his second appeal. *See supra* § II. Likewise, although the notice of trustee's sale was signed and recorded on January 9, 2019, it is not clear on what date Mr. Kolbet received the Notice. *See id.*; (*see also* Compl. ¶ 29 (listing date of foreclosure sale, but not the date that Mr. Kolbet received notice of the sale); Notice at 55 (signed

"1/9/19"); Recorded Notice at 42 (recorded "01/09/2019").)  The court is thus unable to consider the timeline of events and, consequently, whether dual tracking occurred.

Third, Mr. Kolbet fails to state a fraud or intentional misrepresentation claim based on Selene's representation that Mr. Kolbet owed certain sums of money on his loan without providing accounting records.  (*See* Compl. ¶¶ 38, 40(a)-(j), 45, 47(l)-(v).)  Mr. Kolbet does not allege that he relied in any way on these representations or that he believed they were true.  (*See id.*)

In sum, Mr. Kolbet has failed to plead at least one essential element for each purported instance of fraud or intentional misrepresentation.  The court thus GRANTS Selene's motion to dismiss Mr. Kolbet's claims for fraud and misrepresentation.

**E.      Washington Consumer Protection Act**

Selene moves to dismiss Mr. Kolbet's CPA claim.  (*See* MTD at 8-10.)  To prevail on a CPA claim, a plaintiff must prove:  "(1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation."  *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889 (Wash. 2009) (citing *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)).

Selene argues that Mr. Kolbet has failed to plausibly allege an unfair or deceptive act, causation, or damages.  (MTD at 8-10.)  Selene points out that Mr. Kolbet never alleges that the Kolbets continued to make their $1,292.51 monthly loan payment, that Selene induced the Kolbets to stop making these payments, or that any of the parties lack authority to commence the foreclosure.  (*Id.* at 8.)  Moreover, Mr. Kolbet does not allege

that he is capable of curing the full amount of default or paying his required monthly installments. (*Id.*) In addition, although Mr. Kolbet states that Selene did not provide him certain accounting documents to support escrow amounts, Mr. Kolbet never alleges that he asked Selene for those documents or that Selene has a duty to provide those documents absent a request. (*Id.* at 9.)

In response, Mr. Kolbet argues that he alleged two specific unfair or deceptive acts in his complaint, namely, Selene's advice that he sign a deed in lieu of foreclosure and Selene's dual tracking. (Resp. at 8-9; *see also* Compl. ¶¶ 51-57.) Mr. Kolbet further argues that he alleged sufficient causation and harm, namely, he continued to make "mortgage payments towards a loan" that Selene intended to foreclose on, he has "incurred court fees to enforce his legal rights," and he has suffered slander of his representation through reports to the credit reporting agencies and bureaus. (Resp. at 9; *see also* Compl. ¶ 57.)

There is no precise definition of an "unfair or deceptive act or practice." *See Klem v. Wash. Mut. Bank*, 295 P.3d 1179, 1186-87 (Wash. 2013). What is considered an unfair or deceptive act has "evolve[d] through a gradual process of judicial inclusion and exclusion." *Id.* at 1186 (quotations marks and citations omitted). Washington courts explain that a CPA claim "may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Id.* at 1187. "Even accurate information may be deceptive 'if there is a representation,

//

omission or practice that is likely to mislead.'" *State v. Kaiser*, 254 P.3d 850, 858 (Wash. Ct. Appl. 2011) (quoting *Panag*, 204 P.3d at 895).

Here, assuming that Selene's advice to sign a deed in lieu of foreclosure is an unfair or deceptive act that could form a CPA claim,[7] Mr. Kolbet's claim fails because he does not allege causation between this act and his alleged harms of continuing to make mortgage payments, incurring court fees, or having his credit scores impacted. (*See generally* Compl.); *Deegan v. Windermere Real Estate/Ctr.-Isle, Inc.*, 391 P.3d 582, 587 (Wash. Ct. App. 2017) (explaining that a plaintiff asserting a CPA claim must make "some demonstration of a causal link" between the alleged unfair or deceptive act and the plaintiff's injury). Therefore, Mr. Kolbet has failed to state a CPA claim in connection with Selene's advice to sign a deed in lieu of foreclosure.

The court also concludes that Mr. Kolbet fails to plausibly allege that Selene's purported dual tracking was an unfair or deceptive act under the CPA. Again, Mr. Kolbet defines "dual tracking" as a practice "where banks would simultaneously pursue a foreclosure while telling the borrower that his loan modification application was still under consideration." (*See* Compl. ¶ 11.) But according to Mr. Kolbet's complaint, Selene did not engage in dual tracking. Rather, Selene denied Mr. Kolbet's first loan modification application on September 24, 2018, as well as his appeal on an unspecified

---

[7] The court clarifies that it is not deciding that Selene's purported advice to sign the deed in lieu of foreclosure was an unfair or deceptive act under the CPA. The court notes, however, that there is support in the caselaw that a company commits an unfair and deceptive act, cognizable under the CPA, by "falsely offering" to help homeowners avoid foreclosure. *See State v. Kaiser*, 254 P.3d 850, 853, 859 (Wash. Ct. App. 2011).

date.  (*See id.* ¶¶ 15-16, 25.)  Thereafter, Mr. Kolbet reapplied for a loan modification (on

an unspecified date, though it likely occurred near the end of December 2018 because

Mr. Kolbet claims he included "rent deposits for the months of November and December,

2018" with the second application).  (*Id.* ¶ 26.)  Mr. Kolbet alleges that he then reapplied

for mortgage assistance with Selene (on an unspecified date).  (*Id.* ¶ 26.)  Selene denied

his second application (on an unspecified date).  (*Id.* ¶ 27.)  Mr. Kolbet does not allege

that he appealed this denial.  (*See generally id.*)  Selene then recorded its notice of

trustee's sale on January 9, 2019, which specified a foreclosure sale date of May 10,

2019.  (*See* Recorded Notice.)  According to Mr. Kolbet, on or about January 16, 2019,

Selene informed him that it was not requesting any more loan modification documents

because it had a "full package."  (*Id.* ¶ 28.)

       In sum, Selene considered and denied Mr. Kolbet's first loan modification

application, appeal, and second loan modification application.  Selene then initiated the

foreclosure process.  Immediately after initiating foreclosure, Selene told Mr. Kolbet to

stop sending application materials.  Thus, Selene was never engaged in dual tracking

because at no time was Selene "simultaneously pursu[ing] a foreclosure while telling the

borrower that his loan modification application was still under consideration."  (*See*

Compl. ¶ 11.)  Regardless of the title assigned to Selene's alleged acts, they do not

constitute an unfair or deceptive act as pleaded:  repeatedly denying an applicant a loan

modification, initiating a foreclosure process, and then telling the applicant to stop

sending loan modification materials is not "an act or practice that has the capacity to

//

deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *See Klem*, 295 P.3d at 1187.

Even construing the complaint in light most favorable to Mr. Kolbet, Mr. Kolbet has failed to allege a claim under the CPA. The court therefore GRANTS Selene's motion to dismiss Mr. Kolbet's CPA claim.

**F.    Negligence**

Finally, Selene moves to dismiss Mr. Kolbet's negligence claim. (*See* MTD at 10-11.) The elements of negligence are duty, breach, causation, and damages. *Keller v. City of Spokane,* 44 P.3d 845, 848 (Wash. 2002).

Mr. Kolbet asserts that Selene owes him an unspecified duty because of its role as a mortgage loan servicer, its ability to implement foreclosure proceedings, and its responsibility to manage the escrow payments associated with the mortgage. (Compl. ¶ 59 (". . . Defendant owed Plaintiff a duty.").) Mr. Kolbet argues that Selene breached its duty by "refusing to competently process [his] requests for mortgage assistance." (*Id.* ¶ 60.) In his motion to dismiss response, Mr. Kolbet clarifies that, although mortgage servicers such as Selene do not owe a common law duty to modify a loan, they do owe "a fiduciary duty to borrowers," which includes a duty not to "deceive borrowers." (*See* Resp. at 9.) The court concludes that Mr. Kolbet has failed to plausibly allege that Selene owed him a fiduciary duty as his mortgage loan servicer.

Neither party provided a case discussing whether a loan servicer like Selene owes a fiduciary duty to the borrower. (*See* MTD; Resp. Reply.) However, "[t]he general rule in Washington is that a lender is not a fiduciary of its borrower." *Miller v. U.S. Bank of*

*Wash., N.A.*, 865 P.2d 536, 543-44 (Wash. Ct. App. 1994).  Courts within the Ninth Circuit have extended this logic to hold that loan servicers also do not owe borrowers a fiduciary duty.  *See Tedder v. Deutsche Bank Nat. Tr. Co.*, 863 F. Supp. 2d 1020, 1031-32 (D. Haw. 2012) (citing cases, including *Miller*, 865 P.2d at 543) (holding that neither the lender nor the loan servicer owed the borrower a fiduciary duty).  Here, the court concludes that Selene, as the loan servicer, does not owe a general fiduciary duty to Mr. Kolbet, as the borrower.

That said, a "special relationship" may develop between a loan servicer and a borrower such that a fiduciary duty will exist.  *Cf. Miller*, 865 P.2d at 543 (explaining that a special relationship must develop between the lender and borrower for a fiduciary duty to exist).  In addition, "[a] quasi-fiduciary relationship may exist where the [loan servicer] has superior knowledge and information, the borrower lacks such knowledge or business experience, the borrower relies on the [loan servicer's] advice, and the [loan servicer] knew the borrower was relying on the advice." *Id.*

Mr. Kolbet cites no facts or authority that could establish a "special relationship" between him and Selene.  (*See generally* Compl.; Resp.)  Likewise, Mr. Kolbet does not assert that a "quasi-fiduciary" relationship exists between him and Selene, or the basis for such a relationship.  (*See generally id.*)  In total, Mr. Kolbet states in a conclusory fashion that Selene "does have a fiduciary duty to borrowers." (Resp. at 9.)  But absent a special or quasi-fiduciary relationship, neither of which has not been alleged, Mr. Kolbet is incorrect.  *See Miller*, 865 P.2d at 543-44; *Tedder*, 863 F. Supp. 2d at 1031-32.

*//*

Mr. Kolbet further contends that, even absent a fiduciary duty, Selene has a duty to "perform under a mortgage loan agreement in good faith." (Resp. at 7; *see also* Compl. at 16 (requesting that the court declare that Selene breached its "covenant of good faith and fair dealing").) Mr. Kolbet argues that Selene breached this duty of good faith when it advised him to sign the deed in lieu of foreclosure and told him that it had a full package of loan application material. (Resp. at 7.) In other words, Mr. Kolbet argues that the loan contract imposes a duty on Selene to process Mr. Kolbet's loan modification application in good faith. (*See id.*)

"There is in every contract an implied duty of good faith and fair dealing." *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991) (citations omitted). But this duty "does not extend to obligate a party to accept a material change in the terms of its contract." *Id.* (citation omitted). Accordingly, the duty of good faith is not "free-floating," but "exists only in relation to the performance of a specific contract term." *Id*. Thus, in *Badgett*, the Washington Supreme Court held that a bank did not owe borrowers "a good faith duty to affirmatively cooperate in their efforts to restructure the loan agreement." *Id.*

The principle articulated in *Badgett* applies here. Neither the complaint nor the response identifies a contract term that gives rise to a duty by Selene to grant Mr. Kolbet a loan modification. Thus, Mr. Kolbet has failed to allege that Selene breached any duty of good faith and fair dealing that may exist under the loan. *See Massey v. BAC Home Loans Servicing LP*, No. C12-1314JLR, 2012 WL 5295146, at *6 (W.D. Wash. Oct. 26, 2012) (dismissing a breach of good faith and fair dealing claim where the borrower failed

to point to specific contractual terms giving rise to the lender's duty to cooperate in the loan modification process); *Schanne v. Nationstar Mortg., LLC,* No. C10–5753BHS, 2011 WL 5119262, at *4 (W.D. Wash. Oct. 27, 2011) ("Plaintiffs have failed to establish that [defendant] has breached any provision of the contract between the parties in foreclosing on the defaulted loan. Therefore, the Court grants [defendant's] motion on Plaintiffs' claim for breach of good faith and fair dealing because Plaintiffs have failed to state a cognizable legal theory."); *Gossen v. JPMorgan Chase Bank,* No. C11–05506 RJB, 2011 WL 4939828, at *7 (W.D. Wash. Oct.18, 2011) (dismissing claim for breach of duty of good faith and fair dealing because plaintiffs "fail[ed] to identify any contract provision that [the bank] or [the trustee] failed to perform").

In sum, Mr. Kolbet has failed to plausibly allege a duty that Selene owes him. The court therefore GRANTS Selene's motion to dismiss Mr. Kolbet's negligence claim.

## G.    Leave to Amend

When a claim is dismissed pursuant to a Rule 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). Further, when a court dismisses a *pro se* plaintiff's complaint, the court must give the plaintiff leave to amend unless it is "absolutely clear" that amendment could not cure the defects in the complaint. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

//

//

Here, Mr. Kolbet requests that he be afforded leave to amend if the court dismisses his complaint. (Resp. at 10.) Because it is not "absolutely clear" that amendments would be futile, the court GRANTS Mr. Kolbet leave to amend. *See Lucas*, 66 F.3d at 248.

The court further advises Mr. Kolbet that additional deficiencies may exist in his complaint that the court did not address in this order. For example, Selene mentioned in passing in both its motion to dismiss and reply that, in connection with the CPA claim, Mr. Kolbet failed to plausibly allege that the unfair or deceptive act or practice affected the public interest. (*See* MTD at 8; Reply at 6.) The court, however, did not address this cursory argument because Selene did not cite any support and there were sufficient independent grounds upon which to grant Selene's motion.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Mr. Kolbet's motion for an extension of time (Dkt. # 7), GRANTS Selene's motion to dismiss (Dkt. # 5), and GRANTS Mr. Kolbet leave to file an amended complaint within 15 days of the date of this order.

Dated this 21st day of June, 2019.

JAMES L. ROBART
United States District Judge